2008-NMSC-053

192 P.3d 1198

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Ernest SENA, Defendant–Respondent.**

**No. 30,540.**

Supreme Court of New Mexico.

Aug. 26, 2008.

Gary K. King, Attorney General, James W. Grayson, Assistant Attorney General, Santa Fe, NM, for Petitioner.

Hugh W. Dangler, Chief Public Defender, William A. O'Connell, Assistant Appellate Defender, Santa Fe, NM, for Respondent.

**OPINION**

SERNA, Justice.

{1} Defendant Ernest Sena was convicted of two counts of criminal sexual contact of a minor (CSCM), contrary to NMSA 1978, Section 30–9–13(A)(1) (1991, prior to amendments through 2003). He appealed his convictions, citing numerous grounds for error. The Court of Appeals vacated his convictions and remanded for a new trial on the grounds that (1) there was insufficient evidence to support one of his convictions and (2) the trial court had improperly admitted other-acts evidence. The State petitioned this Court to review both issues. We reverse the Court of Appeals and remand to that court to consider the issues that it did not previously reach.

**I. BACKGROUND**

{2} Defendant was indicted on five counts of criminal sexual penetration of a minor (CSPM), contrary to NMSA 1978, Section 30–9–11(C)(1) (1995, prior to amendments through 2007), and seven counts of CSCM. The victim (Child) is Defendant's grand-

daughter. During the summer of 2000, which is the time of the incidents in question, Child would occasionally spend time at her grandparents' house under the supervision of her grandmother and Defendant. One of the couple's responsibilities while taking care of Child was to treat an eczematous rash that covered her body from the back of her waist to the back of her knees; importantly, the rash never appeared on Child's vagina. Part of the treatment regimen required the application of medicinal ointment to Child's rash—a procedure done by both grandmother and Defendant. Child later alleged that Defendant had inappropriately touched her "private area" during at least one of those treatments.

{3} As part of its case against Defendant, the State sought to introduce evidence that he walked around naked in front of Child; that he showed her a pornographic video; that he showed her his wife's thong underwear; and that he showered naked with her (hereinafter collectively referred to as "the grooming evidence"). Before trial, Defendant filed a motion in limine, seeking to exclude the grooming evidence. At a hearing on the motion, the State argued that the grooming evidence showed Defendant's attempt to gain Child's trust and to make her comfortable with things of a sexual nature so that she would become comfortable with his sexual behavior. The State also claimed that the evidence was admissible because it showed Defendant's intent. Defendant argued that the evidence should not be admitted because he was not claiming lack of sexual intent, but instead was denying that any illegal touching had ever occurred. The trial court admitted the grooming evidence pursuant to Rule 11–404(B) NMRA (providing that evidence of other crimes, wrongs, or acts, while inadmissible to show action in conformity with character, may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident).

{4} At trial, Child had difficulty identifying the exact dates on which Defendant had purportedly committed his illegal acts. To help Child locate the events in time, the State utilized two benchmarks that Child could

more easily remember and could rely on when testifying about the details of Defendant's alleged offenses. Thus, all of the crimes with which Defendant was charged were alleged to have occurred between a family trip to Colorado, beginning June 11, 2000, and Child's eighth birthday, on July 8, 2000.

{5} When Child testified at trial, she was inconsistent as to the number of times that Defendant had allegedly touched her during the charging period. When the prosecutor asked Child how many times Defendant had touched her subsequent to the family trip to Colorado, Child responded, "I think it was about five[;] I am not sure." Immediately thereafter, the prosecutor asked, "So did some of it happen before Colorado?" Child said, "Most happened before Colorado and once after." The prosecutor followed up, "Once after Colorado and before your birthday?" Child answered, "Yes." She then proceeded to describe two incidents during which Defendant allegedly touched her inappropriately. First, she explained that once while she was attempting to put lotion on her rash, Defendant intervened to help apply the lotion and then touched her "privates." Second, she testified that Defendant touched her "privates" another time while she was falling asleep.

{6} At the close of the State's case, Defendant moved for a directed verdict. He argued that the evidence was insufficient to support more than one instance of illegal touching and construed Child's testimony as establishing that Defendant touched her only once during the charging period. The trial court denied the motion, ruling that Child's testimony supported two counts of CSPM or, in the alternative, two counts of CSCM. So instructed, the jury found Defendant guilty of both counts of CSCM.

{7} A majority of the Court of Appeals disagreed with the trial court's ruling on the directed verdict motion. *State v. Sena*, 2007–NMCA–115, ¶¶ 8–10, 142 N.M. 677, 168 P.3d 1101. It held that the evidence supported only one CSCM conviction because Child's testimony could not reasonably be interpreted as establishing that Defendant had touched her more than once during the

charging period. *See id.* ¶ 10. The dissent, however, argued that a reasonable jury could have resolved the inconsistencies in Child's testimony to support the trial court's ruling, and thus concluded the trial court had reached the proper result. *Id.* ¶ 35 (Fry, J., dissenting).

{8} The majority also held that the trial court erred in admitting the grooming evidence. *Id.* ¶ 23. Stating that the grooming evidence was improper character evidence purposed on "show[ing] the jury that Defendant acted like a pervert on occasion" in an attempt to "imply that Defendant was acting in conformity with that trait," the majority concluded that the grooming evidence was inadmissible under Rule 11–404(B). *Id.* Again, the dissent disagreed. It countered that our precedent supported admission of the grooming evidence and that the trial court's ruling should have been upheld. *Id.* at ¶¶ 36–38 (Fry, J., dissenting).

{9} On the State's petition, we review each issue in turn, beginning with the directed verdict motion.

## II. THE TRIAL COURT PROPERLY DENIED DEFENDANT'S MOTION FOR A DIRECTED VERDICT

{10} Our review of the denial of a directed verdict motion asks whether sufficient evidence was adduced to support the underlying charge. *See State v. Robinson*, 94 N.M. 693, 696, 616 P.2d 406, 409 (1980). "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Duran*, 2006–NMSC–035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (internal quotation marks and citation omitted). When considering the sufficiency of the evidence, this Court "does not evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence." *State v. Graham*, 2005–NMSC–004, ¶ 13, 137 N.M. 197, 109 P.3d 285 (internal quotation marks and citation omitted). Instead, "[w]e view the evidence as a whole and indulge all reasonable inferences in favor of the jury's ver-

dict," *id.*, while at the same time asking whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *id.* ¶ 7 (alteration in original) (internal quotation marks and citation omitted).

{11} Child's testimony in this case was ambiguous as to the number of times that Defendant touched her during the charging period. She told the jury about two separate instances of inappropriate touching, the first occurring while she was putting lotion on her rash and the second happening while she was falling asleep. However, that testimony came after Child had first stated that Defendant had touched her five times subsequent to the Colorado trip, only to then answer that the touching had occurred just once after Colorado. Thus, Child's testimony was inconsistent. When parts of a witness's testimony are "conflicting and ambiguous[,] ... [i]t is the exclusive province of the jury to resolve [the] factual inconsistencies in [that] testimony." *State v. Morales*, 2000–NMCA–046, ¶ 8, 129 N.M. 141, 2 P.3d 878 (internal quotation marks and citation omitted). In the instant case, the record supports the inference that Defendant touched Child multiple times during the charging period, as well as the inference that he touched her only once during that time. However, the applicable standard of review does not contemplate our "pars[ing] the testimony and view[ing] the verdict only in light of the probative value of individual pieces of evidence." *Graham*, 2005–NMSC–004, ¶ 13, 137 N.M. 197, 109 P.3d 285. Instead, "[a]ppellate courts faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the [prevailing party], and must defer to that resolution." *Id.* (internal quotation marks and citation omitted). Given that presumption and the record before us, we conclude that the jury acted rationally in resolving the factual inconsistencies present in Child's testimony in favor of the conclusion that Defendant touched Child twice during the charging period. We defer to that resolution, and thus agree with Judge Fry's conclusion in dissent that the trial court properly denied Defendant's directed verdict motion. *See Sena*, 2007–NMCA–115, ¶ 35, 142 N.M. 677, 168 P.3d 1101 (Fry, J., dissenting).

## III. THE TRIAL COURT PROPERLY ADMITTED THE GROOMING EVIDENCE

### A. The Grooming Evidence was Admissible under Rule 11–404(B)

{12} "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of ... intent ... or absence of mistake or accident." Rule 11–404(B). Accordingly, "evidence of other acts is admissible under Rule 11–404(B) if relevant to a material issue other than the [d]efendant's character or propensity to commit a crime." *State v. Kerby*, 2007–NMSC–014, ¶ 25, 141 N.M. 413, 156 P.3d 704. We review a trial court's decision to admit evidence under Rule 11–404(B) for abuse of discretion, which occurs when the court's ruling is "clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999–NMSC–001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

{13} In this case, the grooming evidence was admissible to prove Defendant's intent. *See Kerby*, 2007–NMSC–014, ¶ 26, 141 N.M. 413, 156 P.3d 704. To prove CSCM, the State must establish that the defendant's touch was "unlawful," and it may do so by showing that the "defendant's behavior was done to arouse or gratify sexual desire." *Kerby*, 2007–NMSC–014, ¶ 26, 141 N.M. 413, 156 P.3d 704 (internal quotation marks and citation omitted). In *Kerby*, the defendant created a peephole into the victim's bathroom. *Id.* We affirmed the trial court's admission of that other-act evidence to counter the defendant's assertion that he had touched the victim's buttocks merely as a fatherly pat. *Id.* The peephole evidence, we reasoned, supported the inference that the

defendant had touched his victim with a sexual intent, and thus was relevant to prove the unlawfulness element of CSCM. *Id.*

{14} In the instant case, the State elicited testimony from several witnesses that Defendant had admitted to touching Child's "privates" while putting the ointment on her rash. It also cross-examined Defendant with his statement to an investigating officer that he had touched Child's vagina while putting medicine on her rash but had not done so sexually. Thus, evidence offered at trial supported the inference that, when Defendant touched Child during his application of medicinal ointment to her rash, he did so without a sexual intent. The grooming evidence counters that inference because it suggests that Defendant was attempting to familiarize Child with sexuality and thereby to create an atmosphere in which she would be less resistant to his sexual advances. As "evidence of Defendant's sexually fraught conduct with the Child," the grooming evidence was properly admitted to "refute[ ] the evidence that Defendant touched the Child strictly for medical reasons." *Sena,* 2007–NMCA–115, ¶ 37, 142 N.M. 677, 168 P.3d 1101 (Fry, J., dissenting). Thus, while the Court of Appeals correctly asserted that the grooming evidence could not be offered to show Defendant's propensity to "act[ ] like a pervert on occasion," *id.* ¶ 23, it erred in rejecting the evidence as proof of Defendant's intent, *see id.* ¶ 22.

{15} For those reasons, we cannot characterize the trial court's admission of the grooming evidence as clearly untenable or not justified by reason, and thus hold that it was properly admitted under Rule 11–404(B).

**B. The Grooming Evidence was Admissible under Rule 11–403 NMRA**

{16} Defendant argues that, even if the grooming evidence was admissible under Rule 11–404(B), it should have been excluded under Rule 11–403 as unfairly prejudicial. Rule 11–403 states that otherwise relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Other-act evidence that proves only character or propensity is unfairly prejudicial and properly excluded under Rule 11–403. *State v. Otto,* 2007–NMSC–012, ¶ 16, 141 N.M. 443, 157 P.3d 8. However, as we concluded above, the grooming evidence was offered for a legitimate, non-character purpose. Thus, its admissibility under Rule 11–403 depends on the balance of its probative value against any prejudicial effect that it may have had. *See State v. Gallegos,* 2007–NMSC–007, ¶ 22, 141 N.M. 185, 152 P.3d 828. "Determining whether the prejudicial impact of evidence outweighs its probative value is left to the discretion of the trial court." *Rojo,* 1999–NMSC–001, ¶ 48, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). We review such determinations for abuse of discretion and give much leeway to "trial judges who must fairly weigh probative value against probable dangers." *Otto,* 2007–NMSC–012, ¶ 14, 141 N.M. 443, 157 P.3d 8 (internal quotation marks and citation omitted).

{17} In the instant case, the grooming evidence was probative of the fact that Defendant acted with a sexual intent. Without hearing the grooming evidence, the jury was more likely to believe that Defendant touched Child simply for medicinal purposes and less likely to believe that he did so with a sexual intent. Given the probative value of the grooming evidence when offered to show Defendant's intent, we cannot characterize the trial court's admission of it as clearly untenable or unjustified by reason. Thus, we hold that the trial court did not abuse its discretion in admitting the grooming evidence under Rule 11–403.

**C. Expert Testimony was not Required to Submit the Grooming Evidence to the Jury**

{18} While holding that the grooming evidence was inadmissible, the Court of Appeals majority stated that testimony regarding a defendant's grooming behavior is "best left to an expert witness." *Sena,* 2007–NMCA–115, ¶ 25, 142 N.M. 677, 168 P.3d 1101. While we agree with the dissent that the propriety of lay testimony on the subject of grooming was not raised at trial or on appeal, and thus should not have been addressed by the majority, *id.* ¶ 40 (Fry, J.,

dissenting), we are compelled to briefly address the issue.

{19} Rule 11–404(B)'s list of exceptions to the general prohibition against character evidence is not exhaustive; it is merely illustrative. *Gallegos*, 2007–NMSC–007, ¶ 22, 141 N.M. 185, 152 P.3d 828. Apparently in recognition of this, the majority opinion characterized the trial court's ruling as having admitted the grooming evidence under an unlisted exception to Rule 11–404(B). *Sena*, 2007–NMCA–115, ¶¶ 14, 19, 142 N.M. 677, 168 P.3d 1101. Namely, the majority opined that the trial court admitted the grooming evidence to prove the fact that Defendant had engaged in " '[t]he process of manipulation often utilized by child molesters, intended to reduce a victim's or potential victim's resistance to sexual abuse,' " also known as " '[g]rooming.' " *Id.* ¶ 15 (quoting *Ctr. for Sex Offender Mgmt., Glossary of Terms Used in the Mgmt. & Trtmt. of Sexual Offenders* 11 (1999), http://www. csom.org/pubs/glossary.pdf). So viewing the trial court's ruling, the majority proceeded to analyze the evidentiary requirements necessary to offer evidence of a defendant's grooming behavior to prove the fact that grooming actually occurred. *See id.* ¶¶ 16–27.

{20} While an expert witness is needed when details of a scientific or specialized theory and its application to the facts of a particular case are being introduced to the jury, *see* Rule 11–701 NMRA (preventing lay witnesses from testifying "based on scientific, technical or other specialized knowledge within the scope of [the rule governing testimony by experts]"), we do not agree that the grooming evidence in the instant case needed an expert witness to explain to the jury how Defendant's behavior showed his sexual intent or his lack of mistake or accident, *cf. State v. Boyett*, 2008–NMSC–030, ¶ 28, 144 N.M. 184, 185 P.3d 355 (explaining that non-experts can testify about a defendant's intent so long as their testimony addresses matters within the realm of common knowledge and experience). Although the factual question of whether certain behavior constitutes grooming—as the term is scientifically or specially understood—begs an answer laced with details from the theory of grooming, the question of whether certain behavior shows a sexual intent does not. Lay persons are well-aware of what it means to act with a sexual intent, and therefore can identify behavior as exhibiting that trait without the aid of an expert witness.

{21} Thus, in this case, the lay witnesses and lay persons on the jury were well-equipped to understand how Defendant's behavior proved his sexual intent, even though they may have been ill-equipped to decide whether Defendant had groomed Child, according to a scientific or specialized definition of that term. Had the grooming evidence been offered and admitted solely as proof of the fact that Defendant had groomed Child, an expert would likely have been necessary to expound upon the theory of grooming and to explain how that theory applied in this case. However, as detailed above, the grooming evidence was properly admitted to prove intent; creating a new exception to Rule 11–404(B) for grooming, as suggested by the majority opinion, was unnecessary.

{22} We conclude that the grooming evidence, as used in this case, was not based in scientific, technical, or other specialized knowledge and was thus within the realm of lay testimony. We reject any reading of the majority opinion that would be inconsistent with the discussion above.

## IV. CONCLUSION

{23} Based on the foregoing analysis, we reverse the Court of Appeals and remand to that court to consider the issues not previously addressed.

{24} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PETRA JIMENEZ MAES, RICHARD C. BOSSON, CHARLES W. DANIELS, Justices.